## CROWELL v. GILMORE et als.

UNDER the Mechanics' Lien Act of 1856, the mechanic making the first contract, or first commencing work on a building, has no priority over others commencing work subsequently. The statute places all claimants on an equality, and directs the property to be sold and the proceeds applied to all without preference.

This rule of equity would not apply if some mechanics began work before a mortgage was executed by the owner of the property, and some afterwards. In such case, the first lien holders would have priority over the mortgagee, while the latter would not. The first class would be paid in full before the mortgage; then the mortgage, then the last class—each lien holder having equal claims with the others of his class.

APPEAL from the Ninth District.

The facts appear in the opinion, and in 13 Cal. 54.

*E. Garter*, for Appellants, cited Wood's Dig. 538, sec. 7; *Soule* v. *Dawes*, 7 Cal. 575; 13 Id. 54; 14 Id. 127.

*Jas. D. Mix*, for Respondents, cited Wood's Dig. 538; *Cahoon* v. *Levy*, 6 Cal. 295; 7 Id. 575; 13 Id. 54.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Bill filed to enforce a mechanic's lien.

Crowell, the plaintiff, and Scranton, Drummond and Demarest, intervenors, were employed by defendants, Bull & Spencer, to work on a building in Shasta, in October, 1856, and they continued to

work until April, 1857.  On the fifteenth of November, 1856,
Bull & Spencer, the owners, mortgaged the building to defendant
Shea.  After this date, the appellants, Van Schank, Beckhard,
Keely and Hughson, were employed as mechanics on the building,
and continued to work until the first of April, 1857.  In April,
1857, Bull failed in business, and surrendered his property under
the Insolvent Act, and the plaintiff and other mechanics, to whom
considerable sums were due, filed their lien upon the building, and
this action was brought by the plaintiff to foreclose his lien on the
premises.  The other mechanics under the statute intervened, and
asked that their claims be also allowed.  Shea and others, holding
mortgages, intervened, and opposed the lien of the mechanics.  The
District Court rejected the liens in favor of the mortgages, on the
first trial; but this Court (13 Cal. 54) reversed the judgment,
holding that by statute " the lien of the mechanics may be recorded
within sixty days after the completion of the building, and by rela-
tion the lien attaches from the commencement of the work.  All
persons who deal with the property during the progress of the
work are charged with notice of the claim of the contractors."
After the return of the case, the District Court made a decree by
which it directed a sale of the premises, and a distribution of the
proceeds of sale : first, to pay the costs ; second, the claim of
Crowell, who was employed in September, 1856 ; third, the claim
of Demarest, who was employed in October, 1856 ; fourth, the
claim of Drummond, employed in October, 1856 ; fifth, the claim
of Shea, who held a mortgage executed and recorded November
13th, 1856 ; and after this, the several appellants in the order of
time in which they commenced to work upon the building.

From this decree the appellants, the workmen who are post-
poned, appeal.

The statute under which this suit is brought (April 17th, 1856,
Wood's Dig. 537) provides for this lien, as here asserted, for work
and materials.  But there is nothing in the statute which gives
priority to the mechanic who makes the first contract or first com-
mences work.  On the contrary, the general scope of the act would
seem to exclude this idea, and to place all such claims on a footing
of equality.  It gives the lien to all, and directs that all claimants

shall be made parties, and after sale the proceeds to be applied to the payment of all. (See sec. 7.) We cannot undertake to say that the Legislature meant to give a preference, when nothing in the language employed implies such an intention. On the contrary, we think the rule of equality is equity. As the statute makes no discrimination among these lien holders, and as there seems to be no reason founded in justice for making it, we have no authority for discriminating. It is true, that this rule of equality would not apply, if some of these workmen make their contracts before a mortgage was executed by the owner, and some afterwards; for the first would have the priority over the mortgage, and the latter would not. The last contractors have equal claims, each one with the others of the class—but these claims have relation to the property as it stands at the time; that is, the last class in this case have a lien upon the premises incumbered by the mortgage, and subordinate, of course, to that incumbrance; the first class have a lien upon the property unincumbered, and superior to the lien of the mortgage. The first class would be paid in full before the mortgage, then the mortgage, then the last class. It is possible that some confusion may arise from the practical working of the statute, as we have construed it; but if so, this is the fault of the law, and we have no power to remedy it.

Judgment reversed and cause remanded.