Filed 9/8/16  P. v. Panza CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042993 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS111871A) |
| v. | |
| JOSEPH MATTHEW PANZA, | |
| Defendant and Appellant. | |

Defendant Joseph Matthew Panza pleaded guilty to two counts of residential burglary.  (Pen. Code, § 459.)[1]  The trial court imposed a total term of six years in prison but stayed execution of sentence and granted a three-year term of probation.  Panza was subsequently imprisoned on a separate conviction in Arizona.  While imprisoned, he repeatedly requested the trial court in this case to sentence him in absentia under section 1203.2a.  The trial court, however, found Panza's requests failed to comply with the requirements of section 1203.2a.  The court denied all requests until Panza made his last request using a preformatted Judicial Council form filed one year after his initial request.  Panza, however, argued that the court had lost jurisdiction by failing to timely

_____

[1] Subsequent undesignated statutory references are to the Penal Code.

act on his initial request. The court overruled Panza's objection and lifted the stay of execution.

Panza appeals from the trial court's order lifting the stay of execution. He contends the trial court lost jurisdiction to lift the stay because the court failed to act on his initial request within 60 days as required by section 1203.2a. The Attorney General concedes the trial court failed to comply with section 1203.2a, but she contends the trial court retained jurisdiction to lift the stay based on a prior order revoking probation. We conclude the trial court was divested of jurisdiction under section 1203.2a by failing to issue its commitment within 60 days of receiving notice of Panza's initial request. We will reverse the court's order lifting the stay of execution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Facts of the Offenses*[2]

On September 25, 2011, a Carmel resident reported to police that a neighbor's house had been broken into while the neighbor was away. Upon arriving at the neighbor's house, police found a broken garage window and large amounts of blood throughout the interior of the house. The intruder had thoroughly ransacked the house and vandalized the interior.

On September 26, 2011, another Carmel resident arrived home to find her front window smashed and the window frame smeared with blood. The floors and walls were splattered with blood, and a fire extinguisher had been discharged throughout the lower level. A toy car and a vacuum cleaner were missing.

On September 29, 2011, William Babaian arrived at his home in Carmel and discovered a broken kitchen window. His belongings were scattered about the house. Drawers and closets had been ransacked, and a medicine cabinet was open. The computer was turned on and logged into Panza's Facebook page, which included his

---

[2] The statement of facts is based on those set forth in the probation report.

2

biographical information and photographs of him.  On the same day, the bishop of Panza's family's church reported to police that Panza had stolen the bishop's cell phone and laptop computer from the church.

Police arrested Panza on September 30, 2011.  He had staples in his right forearm, and two fingers on his right hand were bandaged.  He admitted he had recently broken into three houses and he admitted stealing two flat screen televisions and a turntable from one of the houses.  Police found the two televisions in his mother's garage.  Panza, who had been diagnosed with bipolar disorder, said he had been drinking alcohol and had suffered a bad reaction to the psychotropic medications he was taking.

## B. *Procedural Background*

The prosecution charged Panza by felony complaint with four counts:  Counts 1, 3, and 4—Residential burglary (§ 459); and Count 2—Grand theft of personal property (§ 487, subd. (a)).  Defendant pleaded guilty to Counts 1 and 3.  On June 12, 2012, the trial court imposed the upper term of six years on Count 1 with a concurrent term of one year four months on Count 3.  The court suspended execution of sentence and granted a three-year term of formal probation to include 365 days in county jail.

Over the course of the next year, probation filed multiple petitions for modification alleging various probation violations.  In February 2013, after Panza admitted violating the terms of his probation, the trial court revoked and reinstated probation "on [the] same terms and conditions."  Panza remained in custody for the next several months with temporary releases to interview for placement in the Delancey Street residential treatment program.

In the most recent petition, filed August 27, 2013, probation alleged Panza violated probation by absconding during an interview at Delancey Street.  On August 29, 2013, Panza failed to appear for arraignment on the alleged probation violation.  The court ordered "[p]robation revoked to retain jurisdiction" and issued a bench warrant for Panza's arrest.

3

On November 1, 2014, Panza mailed a handwritten letter from a prison in Arizona addressed to the Monterey County Superior Court. The letter stated Panza had been convicted of a felony on January 28, 2014, in Arizona, where he was incarcerated for that conviction. Panza wrote, "I Joseph Panza, in absence, and without counsel, wi[sh] the court to impose sentence" under section 1203.2a. The letter appears to be notarized and bears the signature of a correctional officer as a witness. The envelope included a document titled "Inmate Time Computation," which appeared to be generated by the Arizona Department of Corrections. The document indicated Panza had begun serving a two and a half year sentence on January 21, 2014, with a projected release date of March 13, 2016. The trial court stamped the letter received on November 4, 2014.

On November 20, 2014, the prosecution filed a memorandum with the trial court requesting a calendar date for sentencing under section 1203.2a on the ground that Panza, incarcerated in Arizona, was requesting imposition of the sentence. The prosecution sent copies of the memorandum to the probation department and the public defender's office.

The trial court held a hearing on the matter on November 25, 2014, while defendant remained in custody in Arizona. The prosecution informed the court that Panza had been writing to the district attorney's office and that the prosecutor had mailed Panza a copy of section 1203.2a a month before the hearing. The court acknowledged receiving Panza's request, but the court ruled that the request did not satisfy the requirement that the warden or the warden's "duly authorized representative" attest to the request as set forth in the first paragraph of section 1203.2a. Defense counsel argued that the letter satisfied the procedural requirements of section 1203.2a, but the court rejected the argument and instructed counsel to contact Panza.

At the following hearing on December 9, 2014, defense counsel informed the court he had sent a letter to Panza but had not received a response. The court continued the matter until January 6, 2015.

4

On December 15, 2014, Panza wrote a letter to defense counsel reiterating his desire to be "sentenced in absentia." The letter further stated that the correctional officer who had originally signed the request was a duly authorized representative of the warden.

At a hearing on January 6, 2015, defense counsel filed a redacted version of Panza's letter with the court and again asked the court to proceed with sentencing. However, the trial court again ruled that the request failed to comply with section 1203.2a because neither the warden nor the warden's representative had attested that Panza had made and signed the request.

At the next hearing on February 19, 2015, defense counsel informed the court he had received no further documents from Panza. However, counsel again asked the court to proceed with sentencing on the ground that a request made through counsel did not require compliance with the conditions set forth in the first paragraph of section 1203.2a. Counsel further argued that the trial court's failure to act would deprive it of jurisdiction. The court denied counsel's request and ruled that the "proper documentation" had still not been submitted.

At another hearing on April 2, 2015, defense counsel again asked the court to proceed with sentencing, but the court denied the request and continued the matter. The court continued the matter further at another hearing on May 5, 2015.

On November 6, 2015, Panza filed a preformatted Judicial Council form titled "Request for Disposition of Probation" under section 1203.2a. Through the form, Panza asked the court to execute the previously imposed sentence. The form was signed by a correctional officer and certified that he was the duly authorized representative of the warden.

The trial court held a hearing on the matter on November 17, 2015. The prosecution asked the court to lift the stay of execution of the sentence. Defense counsel objected on the ground that the trial court had lost jurisdiction by failing to execute the sentence within the time limit set forth in section 1203.2a. The trial court overruled the

objection on the ground that defendant had never before filed documents in compliance with section 1203.2a. Based on the most recent filing, the court lifted the stay of execution of the previously-imposed sentence of six years. The court ordered the term to be served "concurrent with any sentence that he is serving in any other facility and can be served in any facility."

## II. DISCUSSION

Panza contends the trial court lacked jurisdiction to lift the stay of execution because the court failed to do so within the time limits set forth in section 1203.2a. The Attorney General concedes the court failed to comply with section 1203.2a, but she contends the trial court retained jurisdiction to lift the stay because the court had previously revoked probation. We conclude the court failed to comply with section 1203.2a and thereby lost jurisdiction to lift the stay of execution.

### A. *Legal Principles*

Section 1203.2a sets forth procedures by which a defendant who is released on probation but later imprisoned for another offense may request the trial court that granted probation to impose or execute the sentence in absentia. If the trial court fails to act on the request in a timely manner, it loses jurisdiction to impose sentence in the probation case. The third paragraph of section 1203.2a provides in part, "Upon being informed by the probation officer of the defendant's confinement, or upon receipt from the warden or duly authorized representative of any prison in this state or another state of a certificate showing that the defendant is confined in prison, the court shall issue its commitment if sentence has previously been imposed. . . . If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement." The last paragraph of section 1203.2a provides, "In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the

6

court shall be deprived thereafter of *all jurisdiction* it may have retained in the granting of probation in said case." (Italics added.)

" 'The purpose of section 1203.2a is to prevent inadvertent consecutive sentences which would deprive defendant of the benefit of section 669, providing that sentence shall be concurrent unless the court expressly orders otherwise. [Citations.]' " (*People v. Wagner* (2009) 45 Cal.4th 1039, 1053, quoting *People v. Ruster* (1974) 40 Cal.App.3d 865, 870, disapproved on other grounds by *In re Hoddinott* (1996) 12 Cal.4th 992, 1005.) "When the prisoner requests imposition of sentence under section 1203.2a he receives the benefit of the possibility of concurrent sentences. [Citation.] The trial court and its clerk and probation officer are afforded the convenience of closing their files in a case which otherwise might remain undisposed of for years. Moreover, the procedure seeks to give prisoners the benefit of prompt sentencing or other final disposition while avoiding the government's expenditure of time and funds to produce imprisoned defendants for unnecessary court appearances. [Citations.]" (*Hayes v. Superior Court* (1971) 6 Cal.3d 216, 222.)

A trial court's failure to comply with the time limits set forth in section 1203.2a deprives it of jurisdiction to impose or execute a sentence in the matter for which probation was granted. "[S]ection 1203.2a provides for 3 distinct jurisdictional clocks: (1) the probation officer has 30 days from the receipt of written notice of defendant's subsequent commitment within which to notify the probation-granting court (2d par.); (2) the court has 30 days from the receipt of a valid, formal request from defendant within which to impose sentence, if sentence has not previously been imposed (3d par., 4th sentence); and (3) the court has 60 days from the receipt of notice of the confinement to order execution of sentence (or make other final order) if sentence has previously been imposed (3d par., 3d sentence). Failure to comply with any one of these three time limits divests the court of any remaining jurisdiction. (5th par.)" (*In re Hoddinott, supra,* 12 Cal.4th at p. 999.)

7

**B.** *The Trial Court Failed to Lift the Stay of Execution Within 60 Days*

As set forth above, the trial court received Panza's initial request for sentencing on November 4, 2014. On November 20, the prosecution filed a memorandum requesting a calendar date and sent a copy of Panza's request to the probation department. Panza subsequently made additional requests for sentencing through counsel. Over the course of the next year, the trial court held several hearings on the matter and repeatedly rejected Panza's requests.

The trial court rejected Panza's requests on the ground that he had not complied with section 1203.2a's requirement that the warden or the warden's representative attest to the request. The trial court relied on the first paragraph of section 1203.2a, which provides, "If any defendant who has been released on probation is committed to a prison in this state or another state for another offense, the court which released him or her on probation shall have jurisdiction to impose sentence, *if no sentence has previously been imposed for the offense for which he or she was granted probation*, in the absence of the defendant, on the request of the defendant made through his or her counsel, or by himself or herself in writing, if such writing is signed in the presence of the warden of the prison in which he or she is confined or the duly authorized representative of the warden, and the warden or his or her representative attests both that the defendant has made and signed such request and that he or she states that he or she wishes the court to impose sentence in the case in which he or she was released on probation, in his or her absence and without him or her being represented by counsel." (§ 1203.2a, italics added.) As Panza points out, this paragraph only applies "if no sentence has previously been imposed," whereas here the trial court had previously imposed sentence and stayed its execution. Accordingly, Panza was not required to adhere to the strictures of the first paragraph of section 1203.2a. (*Pompi v. Superior Court* (1982) 139 Cal.App.3d 503, 507 [the requirement for a properly attested request did not apply to petitioner upon whom sentence had been previously imposed with execution stayed].) Instead, the trial court

8

should have applied that portion of the third paragraph of section 1203.2a which applies "if sentence has previously been imposed." (§ 1203.2a.) Under this part of the third paragraph, the trial court had 60 days to "issue its commitment or make other final order terminating its jurisdiction." (*Ibid.*) The court's failure to do so within 60 days deprived it of jurisdiction.[3]

The Attorney General concedes the trial court erred by relying on the first paragraph of section 1203.2a. Nonetheless, she contends the trial court retained jurisdiction based on its order summarily revoking probation on August 29, 2013. For this proposition, the Attorney General relies on *People v. Murray* (2007) 155 Cal.App.4th 149, 156 (*Murray*).) In *Murray*, the defendant pleaded no contest to possession of methamphetamine, among other things, in Fresno County Superior Court. The trial court imposed sentence but stayed its execution and granted a five-year term of probation. While released on probation, the defendant was convicted and imprisoned in Los Angeles County for a separate offense. The Department of Corrections sent a letter to the defendant's probation officer advising the officer of the defendant's imprisonment, but the probation officer took no action. After the defendant was released from prison, the probation officer petitioned for revocation and the trial court summarily revoked probation. At a contested hearing on the probation violation, the defendant argued the court had been divested of jurisdiction under the second paragraph of section 1203.2a, which requires the probation officer to report a probationer's imprisonment to the court within 30 days upon receiving notice from the prison. However, the trial court ruled that

---

[3] Arguably, the probation officer failed to notify the court of Panza's confinement within 30 days of receiving notice, triggering another "jurisdictional clock" under the second paragraph of section 1203.2a. (*In re Hoddinott, supra,* 12 Cal.4th at p. 999.) And although the first sentence of the third paragraph refers to the trial court receiving notice from the probation officer, here Panza and the prosecution notified both the court and the probation officer of Panza's confinement, making it unnecessary for the probation officer to do so. In any event, the parties agree that the court's receipt of notice triggered its duty to respond to Panza's request, regardless of which jurisdictional clock applies.

the letter from the Department of Corrections failed to meet the requirements of section 1203.2a. Accordingly, the trial court lifted the stay of execution and remanded the defendant into custody.

The Fifth District Court of Appeal reversed. (*Murray, supra,* 155 Cal.App.4th at 159.) The court of appeal concluded the letter from the Department of Corrections to the probation officer satisfied the requirements of section 1203.2a. The court of appeal held that under the second paragraph of section 1203.2a the probation officer's failure to report the defendant's imprisonment to the trial court within 30 days divested the trial court of jurisdiction to lift the stay of execution. Accordingly, the court of appeal reversed the trial court's order lifting the stay of execution and vacated the executed prison term.

Based on *Murray*, the Attorney General contends the trial court retained jurisdiction to lift the stay of execution, and she asks that we affirm the trial court's order. *Murray* does not support this contention. The *Murray* court held that the trial court *lost* jurisdiction to lift the stay of execution. (*Murray, supra,* 155 Cal.App.4th at 158.) The court reinstated the sentence on its original terms—imposed but with execution stayed— because it concluded the loss of jurisdiction did not affect the original terms of the sentence. But the court of appeal explicitly declined to determine the scope of the trial court's jurisdiction on remand: "Since the parties have not addressed the issue, we decline to determine, at this juncture, what, if any, jurisdiction the superior court retains over appellant with respect to the original terms of the reinstated sentence." (*Id.* at p. 158.) Thus, in addition to vacating the executed sentence, the disposition ordered that "the original sentence (suspended execution of sentence and grant of probation) is reinstated." (*Id.* at p. 159.)

We decline to adopt the same disposition. The third paragraph of section 1203.2a makes clear that "the court shall be deprived of jurisdiction over defendant" if it fails to act within 60 days after receiving notice of the confinement. (§ 1203.2a.) The last

10

paragraph of section 1203.2a expressly states that the trial court "shall be deprived thereafter of *all jurisdiction it may have retained in the granting of probation* in said case." (Italics added.) Because the statute divests the trial court of all jurisdiction, we have no power to confer any jurisdiction on it. And without any jurisdiction over the defendant, the trial court cannot continue to supervise his probation. (See *People v. Mendoza* (2015) 241 Cal.App.4th 764, 799 [remanding to the trial court with directions to terminate defendant's probation and discharge defendant from probation]; *In re Walters* (1995) 39 Cal.App.4th 1546, 1560 [ordering trial court to terminate probation], disapproved on other grounds by *In re Hoddinott, supra,* 12 Cal.4th at p. 1005.)

The Attorney General argues that we should affirm the order lifting the stay of execution because the trial court retained jurisdiction to sentence Panza based on its prior summary revocation. But as this court recently recognized, the operation of the statute is not affected by a summary revocation of probation. (*In re Mancillas* (Aug. 23, 2016, H042652) __Cal.App.4th__ [2016 WL 4440459].) We noted that prefatory language in the statute applies it to "any defendant who has been released on probation," and we construed that phrase to include defendants whose probationary status had been summarily revoked. This interpretation follows from both the plain language and the purpose of the statute. Affirming the trial court's order lifting the stay of execution would defeat the purpose of the statute, since Panza would be deprived of the opportunity to serve a significant portion of his sentence concurrent with his service in Arizona. Furthermore, a probationer who is imprisoned for another offense is almost always in violation of probation, and it is always possible for a trial court to summarily revoke probation on that basis. If the court could circumvent the requirements of section 1203.2a simply by revoking probation, the statute would have little force.

Finally, we note that, comparable to the defendant in *In re Mancillas*, Panza's original term of probation has since expired. (*In re Mancillas, supra,* ___ Cal.App.4th ___, ___ [p. 16] [2016 WL4440459].) The trial court initially granted a three-year term of

11

probation in June 2012. Probation was then revoked and reinstated "on [the] same terms and conditions" in February 2013. More than three years have since passed. Any tolling under section 1203.2, subdivision (a), only would have extended the court's jurisdiction to adjudicate violations that occurred during the unextended period of probation, which has since expired. (See *People v. Leiva* (2013) 56 Cal.4th 498, 515.)

For the above reasons, we will reverse the order lifting the stay of execution and remand to the trial court with directions to terminate Panza's probation and discharge him from probation.

### III. DISPOSITION

The trial court's order of November 17, 2015, lifting the stay of execution of the sentence imposed on June 12, 2012, is reversed. The six-year term Panza is currently serving as a result of the order of November 17, 2015, is vacated. The matter is remanded with directions to the trial court to terminate Panza's probation and discharge him from probation.

12

_____
RUSHING, P.J.

WE CONCUR:


_____
PREMO, J.




_____
ELIA, J.




*People v. Panza*
**H042993**